UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| IN RE: | ) | Case No. 25-04786-eg |
| | ) | |
| 5 Star Home Care Inc, | ) | Chapter 11 |
| | ) | |
| | ) | **PLAN OF REORGANIZATION** |
| | ) | |
| | ) | |
| | ) | |
| Debtor | ) | |

**DEBTOR, 5 Star Home Care Inc's Plan of Reorganization, dated March 4, 2026**

**Background for Cases Filed Under Subchapter V**

  A.  Description and History of the Debtor's Business

The Debtor is a corporation organized under the laws of South Carolina in 2017. The Debtor is in the business of providing non-medical home caregivers to clients in Horry, Georgetown, and Marion counties. Debtor has approximately 41 employees, but that number fluctuates depending on the needs of its clients. Some Employees are paid on a 1099 basis, and others are on a W-2 basis. Some workers are contracted through a staffing company. The home caregivers do not provide medical services and do not administer medication.

The Debtor's income source is from Medicaid, grants, direct private pay clients, and workers comp. There is a lag time between the time Medicaid is applied for and the time that payment is received, which can be anywhere from 2 weeks to 2 months, depending largely on time entry documentation submitted by the caregivers. In the past, the Debtor had some difficulties with its reimbursement applications which led to excessive delays in receiving payment. As a result, the Debtor had to rely on short-term loans at high interest rates in order to meet its financial obligations. These loans caused further financial distress due to the excessive fees and aggressive payback schedule of the lenders, which then lead to the bankruptcy filing. The Debtor has now improved its process for applying for Medicaid reimbursements.

  B.  Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. The liquidation analysis is as follows:

Assets (as of Petition Date):

| | |
|---|---|
| Cash on Hand | $25.00 |
| Balance of Bank Accounts | $17,117.44 (see ECF 46, Monthly Operating Report) |
| Office Rental Deposit | $875.00 (fully encumbered by SBA liens) |
| A/R (collectible) | $159,121.28 (fully encumbered by SBA liens) |
| Supplies | $221.00 (fully encumbered by SBA liens) |
| Office Furniture | $1,100.00 (fully encumbered by SBA liens) |
| Computers | $1,000.00 (fully encumbered by SBA liens) |

**Total of Unencumbered Assets: $17,142.44. In a hypothetical Chapter 7, the Trustee's fees would be $2,464.24, leaving $14,678.20 for distribution to the unsecured creditors. This entire amount would be paid toward the priority claim of Paychex, leaving $0 for distribution to Non-Priority General Unsecured Creditors in a Hypothetical Chapter 7 liquidation.**

**This Plan proposes using cash flow from operations to pay the allowed claims of general unsecured creditors <u>18%</u>.**

C.        Ability to make future plan payments and operate without further reorganization

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business.

The Plan Proponent has provided projected financial information as **Exhibit A**.

The Plan Proponent's financial projections show that the Debtor will have projected disposable income (defined by §1191(d) of the Bankruptcy Code) for the period described in §1191(c)(2) in the total amount of **$70,584**, after payment of administrative expenses, the priority claims, and the allowed secured claims. The Debtor's projections show that all allowed general unsecured claims will be paid 18%.

Payments to the general unsecured creditors will be made monthly, beginning in the 13th month following the effective date of the Plan, for a period of 24 months.

The final Plan payment is expected to be paid on or before May 2029.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

### Article 1:  Summary

This Plan of Reorganization (the Plan) under Chapter 11 of the Bankruptcy Code (the Code) proposes to pay creditors of **5 Star Home Care Inc** (the "Debtor") from cash flow from operations.

This Plan provides for

> 1 Class of priority claims;
>
> 2 Classes of secured claims;
>
> 1 Class of non-priority unsecured claims; and
>
> 1 Class of equity security holders;

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at 18 cents on the dollar.  This Plan also provides for the payment of administrative, priority, and secured claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim.  **Your rights may be affected.  You should read these papers carefully and discuss them with our attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

### Article 2:  Classification of Claims and Interests

2.01      Class 1:  All allowed claims entitled to priority under §507(a) of the Code (except administrative expense claims under § 507(a)(2), and priority tax claims under §507(a)(8)).

The claim of Paychex (POC #3) in the amount of $16,888.31 is in this Class.

2.02      Class 2:  The unimpaired, fully secured claim of U.S. Small Business Administration ("SBA") as designated in POC 1.

The amount of the claim is $119,233.33. The SBA's lien is a first priority lien.

2.03      Class 3: The secured portion of the SBA's partially secured claim as designated in POC #2. The amount of the claim is $43,083.95. The unsecured portion of POC #2 is treated in Class 4. The SBA's lien for this claim is a second priority lien.

The following creditors were listed on the Debtor's Schedule D as potentially having a secured claim, but these claims were listed as DISPUTED. None of these creditors filed a proof of claim, and therefore they do not have an allowed secured claim and are not included in this Class 3:

Cromwell Capital: Disputed Claim, and no POC filed - Secured Claim Amount of $0
EBF Holdings, LLC d/b/a Everest Business Funding: Disputed Claim, and no POC filed - Secured Claim Amount of $0
First Corporate Solutions:  Disputed Claim, and no POC filed - Secured Claim Amount of $0
Revenued: Disputed Claim, and no POC filed - Secured Claim Amount of $0
SBFS, LLC d/b/a Rapid Finance: Disputed Claim, and no POC filed - Secured Claim Amount of $0
Transportation Alliance Bank: Disputed Claim, and no POC filed - Secured Claim Amount of $0

2.04      Class 4:   All non-priority unsecured claims allowed under § 502 of the Code. This class consists of the following claims (rounded up to the nearest whole dollar amount), to the extent the creditor has an allowed unsecured claim:

| Creditor | Claim Amount |
|---|---|
| American Express | $20,376  (POC #4) |
| Cromwell Capital | $0 (Disputed, and no POC filed) |
| EBF Holdings, LLC d/b/a Everest Business Funding | $0 (Disputed, and no POC filed) |
| Hireology Software | $650 |
| Revenued | $0 (Disputed, and no POC filed) |
| SBA (unsecured claim) | $328,686   (POC #2) |
| SBFS, LLC d/b/a Rapid Finance | $0 (Disputed, and no POC filed) |
| Spectrum Business | $24,698 |
| Transportation Alliance Bank | $0 (Disputed, and no POC filed) |
| WellSky | $21,787 |
| Zoom | $1,000 |

2.05      Class 5:   Equity interests of the Debtor.  This Class consists of Albert Ivatorov and Ilya Igolinski, the Debtor's shareholders.

**Article 3.  Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees.**

3.01      Unclassified Claims

Under §1123(a)(1), administrative expense claims and priority tax claims are not in classes.

3.02      Administrative Expense Claims

The Debtor will owe fees and expenses to the Subchapter V Trustee appointed in the case and to the Debtor's bankruptcy counsel, which constitute administrative expense claims.

The Subchapter V Trustee (Harrison Penn) will be paid in full for his fees and expenses that are approved by the Court upon the filing of an appropriate fee application. Payment will be made at the rate of $500.00 per month, until paid in full. If the Plan is confirmed under § 1191(b) on a non-consensual basis, it is anticipated that Trustee Penn will incur additional fees after confirmation and will file one more additional fee applications before the closing of the case.

3

Bankruptcy Counsel for the Debtor (Barton Brimm, PA) will be paid in full for its fees and expenses that are approved by the Court upon the filing of an appropriate fee application, for time and expenses incurred through confirmation of the Plan. Fees and expenses incurred by Barton Brimm after Plan confirmation will be paid by the Debtor without the need for further Court order. Payment will be made at the rate of $1,500.00 or more per month, until paid in full.

The Debtor owes payroll taxes to the IRS for Q4 2025 in the estimated amount of $13,493.29. If the Plan is confirmed as a consensual plan under § 1191(a), then this will be paid in full on the effective date of the Plan. If the Plan is confirmed under § 1191(b), then the Debtor may elect to pay this in equal monthly installments in the amount of $375 over a period of 36 months, pursuant to § 1191(e).

The Debtor owes payroll taxes to the SC DOR for Q4 2025 in the estimated amount of $13.38. This will be paid in full on the effective date of the Plan.

3.03    Priority tax claims

Each holder of a priority tax claim will be paid in regular installment payments in the total amount of the claim over a period ending not later than 5 years after the date of the order for relief.

The time for taxing authorities to file a claim has not run at the time of the filing of this Plan, but the Debtor is not aware of any priority tax claims, other than the administrative claims that are treated in Section 3.02..

3.04    Statutory Fees

All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the effective date.

3.05    Prospective quarterly fees.

As this case was filed under Subchapter V, no quarterly fees pursuant to 28 U.S.C. § 1930(a)(6) or (a)(7) are owed or will be owed by the Debtor.

**Article 4.  Treatment of Claims and Interests Under the Plan**

4.01    **Claims and interests shall be treated as follows under the Plan:**

Class 1 – Priority Claim of Paychex.  **This class is impaired.**  Debtor proposes making payments in equal monthly installments for a period of 24 months, with interest accruing at 8.25%. This calculates to a monthly payment of **$765.74** to Paychex, for a period of 24 months. The first payment will be made in the month following the Effective Date of the Plan.

Class 2 – Fully Secured Claim of SBA (POC #1). **This class is unimpaired.** The Debtor will make the regular contract payments on this loan, in the amount of $545.00 per month, at the contractual interest rate of 3.75%, until paid in full. The SBA will retain its lien on its collateral until such lien is released by the secured creditor, or released by operation of law (for example, expiration of a UCC-1 filing that is not renewed), or until payment in full of its allowed secured claim. At such time as the payment of the allowed secured claim is completed, the SBA will be required to release its lien and execute whatever documents are necessary to effectuate such release and satisfaction.

Class 3 –  Secured portion of the SBA's partially secured claim (POC #2). **This class is impaired.** The amount of the claim is $43,083.95. The Debtor will pay this allowed secured claim over 36 months at the contract rate of 3.75%,

4

which calculates to payments of **$1,267.22** per month for 36 months. The SBA will retain its lien on its collateral until such lien is released by the secured creditor, or released by operation of law (for example, expiration of a UCC-1 filing that is not renewed), or until payment in full of its allowed secured claim. At such time as the payment of the allowed secured claim is completed, the SBA will be required to release its lien and execute whatever documents are necessary to effectuate such release and satisfaction.

Class 4 – General Unsecured Claims.   **This class is impaired.** This class consists of all general unsecured claims. The total claims in this class, before the claims objection process (if any), is $397,197.

The Debtor has estimated that it needs emergency reserves of about $20,000-$22,000 (approximately 15% of average monthly revenue) to account for fluctuations in collections and unanticipated expenses. It will take the Debtor about 12 months to build up this reserve. After the reserve has been accumulated, the Debtor will commit all remaining projected disposable income to Class 4. The projected amount available for payment to Class 4 is **$2,941 per month for a period of 24 months, for a total payment of $70,584, which is approximately 18% of the claims in this class**. The Debtor will pay this amount on a pro-rata basis to Class 4 creditors in Year 2 and Year 3 of the Plan. Payments will be made monthly, beginning the 13th month following the Effective Date of the Plan, in accordance with the following:

| Creditor | Claim Amount | 24 payments beginning approximately June 2027: | TOTAL PAID: |
|---|---|---|---|
| American Express | $20,376 | $150.87 | $3,620.88 |
| Hireology Software | $650 | $4.81** | $115.44** |
| SBA | $328,686 | $2,433.72 | $58,409.28 |
| Spectrum Business | $24,698 | $182.87 | $4,388.88 |
| WellSky | $21,787 | $161.32 | $3,871.68 |
| Zoom | $1,000 | $7.40** | $177.60** |
| TOTAL | $397,197 | $2940.99 | $70,583.76 |

** For convenience, the Debtor may pay out the total owed on these claims in a single lump sum.

Class 5 – Equity security holders of the Debtor:   **This class is impaired.** The existing shareholders will maintain their ownership interest in the company.

**Article 5:   Allowance and Disallowance of Claims**

5.01    **Disputed Claims**

Any amount of claim set forth in this Plan is for informational purposes only and is not binding as to disputed claims. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either:
 (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

(ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02    **Delay of distribution on a disputed claim.**

No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.03    **Settlement of disputed claims**

The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and

compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

**Article 6.  Provisions for Executory Contracts and Unexpired Leases**

6.01   **Assumed executory contracts and unexpired leases**

(a)   The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the effective date:

Office Lease with Palmetto Property Advisors, LLC

(b)   Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section 6.01(a) of this Plan, or that are subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date.

A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 14 days after the date of the order confirming this plan.

**Article 7.  Means for Implementation of the Plan**

This Plan will be funded from the Debtor's cash flow. Albert Ivatorov will continue in his role as the President of the Debtor.

**Article 8:  General Provisions**

8.01   **Definitions and rules of construction**.   The definitions and rules of construction set forth in 11 U.S.C. §§101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

8.02   **Effective Date**.   The effective date of this Plan is the first business day following the date that is fourteen (14) days after the entry of the confirmation order.  If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated.

8.03   **Severability.**   If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04   **Binding effect.**   The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.05   **Captions.**   The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.06   **Controlling effect.**   Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure) the laws of the State of South Carolina govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

8.07   **Corporate governance.**   The Debtor is a corporation, and has two shareholders, Albert Ivatorov and Ilya Igolinski. Mr. Ivatorov is the President and the day-to-day manager of the company, and he will continue in that role.

8.08   **Retention of jurisdiction.**   The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters:  (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under section 1193; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues

regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

**Article 9.        DISCHARGE**

If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

      (i)        imposed by this Plan;
            or
      (ii)       to the extent provided in § 1141(d)(6).

If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the Court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code.  The Debtor will not be discharged from any debt:

      (i)        on which the last payment is due after the first 3 years of the Plan, or as otherwise provided
             in § 1192;
            or
      (ii)       excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of
             the Federal Rules of Bankruptcy Procedure.

**Article 10:  Other Provisions**

      Debtor, rather than the subchapter V trustee, will make all Plan payments, regardless of whether the Plan is confirmed pursuant to 11 U.S.C. § 1191(a) or § 1191(b).

Respectfully submitted,

BARTON BRIMM, PA

/s/ Christine E. Brimm
Christine E. Brimm, #6313
P.O. Box 1044
Pawleys Island, SC  29585
(803) 256-6582
cbrimm@bartonbrimm.com
Attorney for Debtor

[Signature of the Plan Proponent]
Printed Name: Albert Ivatorov, President

**Article 9.      DISCHARGE**

If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

  (i)      imposed by this Plan;
           or
  (ii)     to the extent provided in § 1141(d)(6).

If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the Court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

  (i)      on which the last payment is due after the first 3 years of the Plan, or as otherwise provided
           in § 1192;
           or
  (ii)     excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of
           the Federal Rules of Bankruptcy Procedure.

**Article 10:  Other Provisions**

          Debtor, rather than the subchapter V trustee, will make all Plan payments, regardless of whether the Plan is confirmed pursuant to 11 U.S.C. § 1191(a) or § 1191(b).

                                          Respectfully submitted,

                                          BARTON BRIMM, PA

                                          /s/ Christine E. Brimm
                                          Christine E. Brimm, #6313
                                          P.O. Box 1044
                                          Pawleys Island, SC 29585
                                          (803) 256-6582
                                          cbrimm@bartonbrimm.com
                                          Attorney for Debtor

[Signature of the Plan Proponent]
Printed Name: Albert Ivatorov, President

7

EXHIBIT A

5 Star Home Care Inc

Monthly Cash Collateral Budget

| | Apr-26 | May-26 | Jun-26 | Jul-26 | Aug-26 | Sep-26 | Oct-26 | Nov-26 | Dec-26 | Jan-27 | Feb-27 | Mar-27 | Apr27-Mar28 | Apr28-Mar29 | Apr-29 | May-29 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **INCOME** | | | | | | | | | | | | | | | | |
| CLTC Reimbursements | 80000 | 80000 | 80000 | 80000 | 80000 | 80000 | 80000 | 80000 | 80000 | 80000 | 80000 | 80000 | 960000 | 960000 | 80000 | 80000 |
| VA Payments | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 60000 | 60000 | 5000 | 5000 |
| Private Pay Clients | 20000 | 20000 | 20000 | 20000 | 20000 | 20000 | 20000 | 20000 | 20000 | 20000 | 20000 | 20000 | 240000 | 240000 | 20000 | 20000 |
| DDSN/WAC Contracted Services | 32000 | 32000 | 32000 | 32000 | 32000 | 32000 | 32000 | 32000 | 32000 | 32000 | 32000 | 32000 | 384000 | 384000 | 32000 | 32000 |
| Client Intake Fees | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6000 | 6000 | 500 | 500 |
| Misc / Grants | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 12000 | 12000 | 1000 | 1000 |
| | **138500** | 138500 | 138500 | 138500 | 138500 | 138500 | 138500 | 138500 | 138500 | 138500 | 138500 | 138500 | **1662000** | 1662000 | 138500 | 138500 |
| | | | | | | | | | | | | | | | | |
| **EXPENSES** | | | | | | | | | | | | | | | | |
| Direct Staff Payroll | 107008 | 107008 | 107008 | 107008 | 107008 | 107008 | 107008 | 107008 | 107008 | 107008 | 107008 | 107008 | 1284096 | 1284096 | 107008 | 107008 |
| Office Staff Payroll | 15360 | 15360 | 15360 | 15360 | 15360 | 15360 | 15360 | 15360 | 15360 | 15360 | 15360 | 15360 | 184320 | 184320 | 15360 | 15360 |
| Owner/Insider Compensation | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 48000 | 48000 | 4000 | 4000 |
| Payroll taxes/fees | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 9600 | 9600 | 800 | 800 |
| Office Rent | 875 | 875 | 875 | 875 | 875 | 875 | 875 | 875 | 875 | 875 | 875 | 875 | 10500 | 10500 | 875 | 875 |
| Utilities/Phone/Internet | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 9000 | 9000 | 750 | 750 |
| Supplies/Printing | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 2400 | 2400 | 200 | 200 |
| Software/Subscriptions | 1050 | 1050 | 1050 | 1050 | 1050 | 1050 | 1050 | 1050 | 1050 | 1050 | 1050 | 1050 | 12600 | 12600 | 1050 | 1050 |
| Insurance | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6000 | 6000 | 500 | 500 |
| Transportation/Mileage | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 10200 | 10200 | 850 | 850 |
| PPE/Medical Supplies | 650 | 650 | 650 | 650 | 650 | 650 | 650 | 650 | 650 | 650 | 650 | 650 | 7800 | 7800 | 650 | 650 |
| SBA POC 1 contract pymt | 545 | 545 | 545 | 545 | 545 | 545 | 545 | 545 | 545 | 545 | 545 | 545 | 6540 | 6540 | 545 | 545 |
| | **132588** | 132588 | 132588 | 132588 | 132588 | 132588 | 132588 | 132588 | 132588 | 132588 | 132588 | 132588 | **1591056** | 1591056 | 132588 | 132588 |
| | | | | | | | | | | | | | | | | |
| FOR DISTRIBUTION | 5912 | 5912 | 5912 | 5912 | 5912 | 5912 | 5912 | 5912 | 5912 | 5912 | 5912 | 5912 | 70944 | 70944 | 5912 | 5912 |
| | | | | | | | | | | | | | | | | |
| **Plan Payments:** | | | | | | | | | | | | | | | | |
| SubV Trustee | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 100 | 100 |
| Bankr Counsel | 1500 | 1500 | 1500 | 1500 | 1500 | 1500 | 1500 | 1500 | 1500 | 1500 | 1500 | 1500 | 12000 | 12000 | 1000 | 1000 |
| IRS Q4 2025 payroll taxes | | | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 4500 | 4500 | 375 | 375 |
| Class 1 Priority Paychex | 0 | 0 | 766 | 766 | 766 | 766 | 766 | 766 | 766 | 766 | 766 | 766 | 9192 | 1532 | 0 | 0 |
| Class 3 SBA | 1268 | 1268 | 1268 | 1268 | 1268 | 1268 | 1268 | 1268 | 1268 | 1268 | 1268 | 1268 | 15216 | 15216 | 1268 | 1268 |
| Class 4 GUC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 29410 | 35,292 | 2941 | 2941 |
| | | | | | | | | | | | | | | | | |
| Surplus | 2644 | 2644 | 1503 | 1503 | 1503 | 1503 | 1503 | 1503 | 1503 | 1503 | 1503 | 1503 | 126 | 1,904 | 228 | 228 |
| | | | | | | | | | | | | | | | | |
| Cummulative Reserves | 2644 | 5288 | 6791 | 8294 | 9797 | 11300 | 12803 | 14306 | 15809 | 17312 | 18815 | 20318 | 20444 | 22348 | 22576 | 22804 |