## U.S. BANKRUPTCY COURT
### District of South Carolina

Case Number:  **25-04786-eg**

## MEMORANDUM OPINION

The relief set forth on the following pages, for a total of 22 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**04/24/2026**



Entered: 04/24/2026

Elisabetta G. M. Gasparini
US Bankruptcy Judge
District of South Carolina

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

IN RE:

5 Star Home Care, Inc.,

Debtor(s).

C/A No. 25-04786-EG

Chapter 11

**MEMORANDUM OPINION**

**THIS MATTER** came before the Court for a confirmation hearing to consider the Plan of Reorganization[1] and the Modified Plan of Reorganization[2] filed by 5 Star Home Care, Inc. ("Debtor"). The hearing was attended by counsel for Debtor, Christine Brimm; Albert Ivatorov ("Mr. Ivatorov"), Debtor's president and fifty percent shareholder; Debtor's office manager; counsel for the United States Trustee ("UST"); and the Chapter 11 Subchapter V Trustee, William Harrison Penn. Debtor's counsel requested that the plan be confirmed under 11 U.S.C. § 1191(a), but the UST objected.[3]

At the intersection of statutory text and practical reality lies a deceptively simple question: what is the legal effect of a "silent" impaired class where no votes are cast? Silence may signal consent in certain areas of the law, but whether it does so in the context of an impaired class of creditors or interest holders not casting any votes in a subchapter V plan presents a question of statutory interpretation with significant consequences. In this subchapter V case, the Court must determine the meaning of that silence when it comes from a federal agency. The chapter 11 plan of reorganization in this case classified creditors and equity in five separate classes—four of which were classified as impaired. Three of the four impaired classes voted to accept the plan. Class 3,

---

[1] ECF No. 51, filed Mar. 4, 2026.
[2] ECF No. 67, filed Apr. 6, 2026.
[3] ECF No. 81, filed Apr. 13, 2026.

1

comprised of a claim by the U.S. Small Business Administration ("SBA")—a creditor empowered to accept or reject a chapter 11 plan under 11 U.S.C. § 1126(a)—neither accepted nor rejected the plan. In the absence of any vote by an impaired class, the Court must resolve whether the class should be treated as having accepted the plan for purposes of consensual confirmation under § 1191(a), or whether the plan must be confirmed under § 1191(b). After considering the record before it, the arguments of the parties, and applicable law, the Court confirms Debtor's plan under § 1191(b) and enters the following findings of fact and conclusions of law.

### FINDINGS OF FACT

#### A. Background

Debtor filed a petition for relief under chapter 11, subchapter V of the Bankruptcy Code on December 4, 2025.[4] Debtor is a corporation in the business of providing non-medical home caregivers to clients. Its income is derived from Medicaid, grants, direct private pay clients, and workers compensation. In the past, Debtor had difficulties with its Medicaid reimbursement applications which resulted in excessive delays in receiving payment. Due to these delays, Debtor obtained short-term loans at high interest rates to meet its financial obligations, which caused additional financial distress and ultimately led to the bankruptcy filing.

#### B. The Plan

Debtor filed a Plan for Reorganization on March 4, 2026, and a Modified Plan for Reorganization on April 6, 2026 (collectively, the "Plan").[5] The Plan categorizes Debtor's creditors and interest holders into five classes:

---

[4]ECF No. 1.

[5]As Debtor's counsel explained at the confirmation hearing, American Express filed a second proof of claim (POC #5) the same day the original Plan of Reorganization was filed, reflecting an additional debt that Debtor owed it. The modifications to the Plan were in part due to the additional language requested by the UST and to include American Express's second claim (POC #5).

1. **Class 1** consists of Paychex's claim, for which Debtor proposes payment of $765.74 per month for twenty-four (24) months, commencing the month following the effective date of the Plan;

2. **Class 2** consists of the SBA's fully secured claim, as reflected in POC #1, for which Debtor proposes regular contract payments of $545.00 per month, at the contractual interest rate of 3.75%, until paid in full;

3. **Class 3** consists of the secured portion of the SBA's partially secured claim as reflected in POC #2, for which Debtor proposes to pay $1,267.22 per month, at the contractual interest rate of 3.75%, for thirty-six (36) months;

4. **Class 4** consists of all non-priority unsecured claims including American Express's two claims and the unsecured portion of the SBA's partially secured claim as designated in POC #2, for which Debtor proposes to pay approximately 18% of the claims on a pro rata basis over a period of twenty-four (24) months in year 2 and 3; and

5. **Class 5** consists of Debtor's two shareholders, who will maintain their ownership interest in the company.

The Plan classifies Classes 1, 3, 4, and 5 as impaired. The Plan further provides that even if it is not confirmed as a consensual plan, "Debtor, rather than the subchapter V trustee, will make the Plan payments."[6]

Debtor filed a Certificate of Service attesting to serving the Plan, ballots for accepting or rejecting the Plan, and the Order Setting Confirmation Hearing and Related Deadlines (ECF No. 52) on the entire creditor matrix.[7] Paychex (Class 1) and Mr. Iratorov (Class 5) filed ballots accepting the Plan.[8] American Express (Class 4) originally filed two ballots rejecting the Plan,[9] but subsequently filed amended ballots accepting the Plan after Debtor filed the Modified Plan for Reorganization.[10] Class 3 failed to accept or reject the Plan.

---

[6] ECF No. 51, Article 10.
[7] ECF No. 53, filed Mar. 4, 2026.
[8] ECF Nos. 65-66.
[9] ECF Nos. 71-72, filed Apr. 6, 2026. The Court notes that Debtor's counsel filed the ballots for American Express dated April 3, 2026, at ECF Nos. 71-72. American Express had also mailed the same original ballots to the Court, which the Court received on April 10, 2026. ECF No. 79.
[10] ECF Nos. 73-74, filed Ap. 7, 2026.

### C. Proponents Ballot Tally and UST's Response

Debtor filed the Proponent's Ballot Tally ("Ballot Tally")[11] on April 7, 2026, asserting that the Plan complies with the provisions of the Bankruptcy Code and is confirmable as a consensual plan pursuant to 11 U.S.C. § 1191(a), notwithstanding Class 3's "silence." Debtor argues that the status of Class 3 is "unclear" and is "arguably UNIMPAIRED" since it is being paid in full at the contract interest rate, and the payment of the claim is accelerated to be fully paid during the plan term as opposed to the thirty (30) year contract term. Alternatively, if Class 3 is deemed impaired, Debtor contends that the Court should either treat Class 3 as having accepted the Plan or disregard the class altogether under the specific facts of this case. Debtor represents that the SBA, as the sole creditor in Class 3, purportedly follows a "policy" of not voting on chapter 11 plans, based on § 1126(a), which provides that when the United States is a creditor, the Secretary of Treasury may vote on its behalf. *See* 11 U.S.C. § 1126(a).

Debtor further maintains that the Bankruptcy Code does not impose an express requirement that a silent class be treated as having rejected the Plan and that it is Congress's preference that subchapter V plans be confirmed as consensual. Thus, Debtor posits the Court should exercise its equitable powers to confirm Debtor's plan as consensual pursuant to 11 U.S.C. § 1191(a). Finally, Debtor argues that the facts of this case are distinguishable from those requiring affirmative acceptance by impaired classes for confirmation under § 1191(a), as this case involves a single class comprised of a single governmental creditor that failed to vote.

The UST filed a Response on April 13, 2026, arguing that the Plan cannot be confirmed under § 1191(a) because Class 3 is impaired and failed to affirmatively accept the Plan.[12] While acknowledging that Congress favors consensual plans in subchapter V cases, the UST maintains

---

[11] ECF No. 75, filed Apr. 7, 2026.
[12] ECF No. 81.

that the Bankruptcy Code unambiguously requires an affirmative vote for an impaired class to accept a plan. The UST, however, raises no objections to confirmation of the Plan under § 1191(b).

### D. Confirmation Hearing

At the confirmation hearing, Debtor's Counsel proffered the testimony of Mr. Iratorov regarding the Plan's feasibility. Debtor further indicated that the monthly operating reports have been timely filed, and the company has been meeting the net income projections. At the hearing, the parties reiterated the arguments raised in their pleadings. Debtor's counsel acknowledged that the SBA's claim was technically impaired but requested that the Court apply a narrow exception allowing the silence of a government entity to be treated as an acceptance or disregarded for purposes of § 1129(a)(8) and §1126.

## APPLICABLE LAW

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and this Court may enter a final order. Section 1129 of the Bankruptcy Code expressly provides that, with some exceptions, "[t]he Court shall confirm a plan *only if* all of [the enumerated] requirements are met." 11 U.S.C. § 1129(a) (emphasis added). "Even in the absence of creditor objections, the court has an independent duty to determine that the confirmation requirements of 11 U.S.C. § 1129 are met[.]" *In re Hamilton-Gaertner*, No. 17-00271-5-DMW, 2019 WL 2366421, at *4 (Bankr. E.D.N.C. May 1, 2019) (quoting *In re Landscaping Servs., Inc.*, 39 B.R. 588, 590 (Bankr. E.D.N.C. 1984)).

A plan under subchapter V of chapter 11 of the Bankruptcy Code may be confirmed as consensual under § 1191(a) or as nonconsensual under § 1191(b). Section 1191 provides, in pertinent part:

5

(a) **Terms**—The court shall confirm a plan under this subchapter only if all of the requirements of section 1129(a), other than paragraph (15) of that section, of this title are met.

(b) **Exception**— Notwithstanding section 510(a) of this title, *if all of the applicable requirements of section 1129(a) of this title, other than paragraphs (8), (10), and (15) of that section*, are met with respect to a plan, the court, on request of the debtor, shall confirm the plan notwithstanding the requirements of such paragraphs if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

11 U.S.C. § 1191 (emphasis added).  For a nonconsensual plan to be "fair and equitable" with respect to secured claims, it must meet the chapter 11 requirements of § 1129(b)(2)(A); as to other classes of claims or interests, the plan may be confirmed if it meets the requirements of §1191(c)(2) and (3).

Subchapter V provides some benefits to a debtor when a plan is confirmed as consensual under § 1191(a).  *See In re Creason*, No. 22-00988-SWD, 2023 WL 2190623, at *2-3, n.3 (Bankr. W.D. Mich. Feb. 23, 2023).  One such benefit is that the discharge provisions of § 1141, except for subsection 1141(d)(5), become effective upon confirmation.  The scope of a debtor's discharge with respect to a nonconsensual subchapter V plan, on the other hand, is determined by § 1192 and is generally granted upon completion of plan payments.  Another benefit of a consensual plan is that the subchapter V trustee's services terminate after the plan has been substantially consummated; whereas with a nonconsensual plan, the subchapter V trustee remains in place to administer plan payments, unless the plan or an order provides otherwise.[13]  *See* 11 U.S.C. § 1183(c)(1).  Additionally, when a subchapter V plan is confirmed as consensual, the debtor retains postpetition property, but if the plan is nonconsensual, the postpetition property remains property of the estate.  *See* 11 U.S.C. § 1186.  To receive the benefits extended to a debtor through

---

[13] *See supra* note 6 and accompanying text.

6

a consensual plan, however, a subchapter V debtor must satisfy the requirements of § 1129(a)(8) and (a)(10).

Section 1129(a)(8) generally requires a debtor to establish that each class of creditors has either "accepted" the plan or is not impaired under the plan. *See* 11 U.S.C. § 1129(a)(8). Moreover, § 1129(a)(10) requires that "if a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider." 11 U.S.C. § 1129(a)(10). Pursuant to § 1126(f), a class that is "not impaired under a plan . . . [is] conclusively presumed to have accepted the plan." For an impaired class of creditors, § 1126 provides that such a class has accepted the plan "if such plan has been accepted by creditors that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors . . . that have accepted or rejected such plan." 11 U.S.C. § 1126(c). Section § 1126 also provides that if the United States is a creditor "the Secretary of the Treasury *may* accept or reject the plan on behalf of the United States." 11 U.S.C. § 1126(a) (emphasis added).

Acceptances and rejections of chapter 11 plans are also governed by Federal Rule of Bankruptcy Procedure 3018(c), which expressly provides that "[a]n acceptance or rejection shall be *in writing*, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent, and conform to the appropriate Official Form." Fed. R. Bankr. P. 3018(c) (emphasis added).

<u>**CONCLUSIONS OF LAW**</u>

The Court is presented with two primary questions: (1) whether the SBA's claim is impaired and (2) whether the Plan can be confirmed as consensual under § 1191(a) when an

impaired class—consisting solely of a government agency—fails to vote to accept or reject a plan. The Court addresses each of these issues below in turn.

### A. *Impairment of SBA's Class 3 Claim*

The Plan and Ballot Tally specifically designate Class 3 as an impaired class. For the first time since the Plan was solicited, in an explanation provided in the Ballot Tally, Debtor contends the status of Class 3 is "unclear" and is "arguably UNIMPAIRED." Debtor did not identify any legal authority—either statutory or precedential—to support its novel position. In furtherance of this argument, Debtor posits that the claim is the secured portion of the SBA's POC #2, in the dollar amount the SBA designated, and it is being paid in full at the contract interest rate. Moreover, the payment of the secured portion of the claim is being accelerated to be paid in full during the three (3) year term of the Plan, as opposed to the thirty (30) year contract term. Thus, Debtor argues that, if Class 3 is deemed "not impaired" under the Plan, whether Class 3 has voted is of no consequence. *See* 11 U.S.C. § 1129(a)(8).

Section 1124 sets forth the requirements for determining whether a claim is impaired under a plan and provides that a claim is generally not impaired if it "leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest." *See* 11 U.S.C. § 1124(a). "Impairment" has been broadly interpreted. *See In re Tree of Life Church*, 522 B.R. 849, 861 (Bankr. D.S.C. 2015); *see also In re Schwarzmann*, 103 F.3d 120 (4th Cir. 1996) (acknowledging that "it is 'well established' that § 1124 defines impairment in very broad terms").

At the hearing, Debtor's counsel did not press that argument further and offered no persuasive rationale for why, after the ballot deadline passed, Class 3 should be deemed unimpaired. Leaving aside whether Class 3 should be entitled to postpetition interest, an issue which has not been raised, the Plan proposes to pay the SBA's Class 3 claim over the three (3) year

8

life of the plan at the contractual rate of 3.75%.  Pursuant to the original loan agreement, the loan

would mature around 2050 and bears interest at a rate of 3.75% per annum.  Thus, it appears that

accelerating the loan would, in essence, reduce the total amount of interest that would otherwise

accrue under the contract.  In any event, from a procedural standpoint, it would be improper to

solicit votes on a plan and thereafter change the classification of a class to "unimpaired" once

voting has concluded—at least without first amending the plan and resoliciting votes as required

by Fed. R. Bankr. P. 3019(a).  Accordingly, the Court will not permit Debtor to reclassify Class 3

to "unimpaired" after solicitation  to secure "consensual" confirmation under 11 U.S.C. § 1191(a).

### B.  Non-Voting Impaired Class

The second issue before the Court is whether a subchapter V plan can be consensually

confirmed under § 1191(a) when an impaired class of creditors does not vote.

### 1.  Different Approaches to Impaired Classes Not Voting on a Plan

Courts are divided on the issue, and a review of relevant case law shows four prominent

approaches that courts have applied: (1) a non-voting class is deemed to have accepted the plan

for purposes of § 1129(a)(8); (2) a solicitation order may provide that a non-voting class will be

deemed to have accepted for purposes of § 1129(a)(8); (3) a non-voting class is disregarded for

purposes of § 1129(a)(8); and (4) a non-voting class cannot satisfy the requirements of

§ 1129(a)(8).  The Fourth Circuit has not directly addressed the issue of a non-voting class, and no

circuit court has addressed it for purposes of § 1191(a) in the context of subchapter V plans.[14]

The first approach is often referred to as the "deemed acceptance" view.  Several courts

have adopted the concept of "deemed acceptance" so that a class is deemed to have "accepted" the

---

[14] The Court notes that while no reported opinion has been entered in this District on the issue, the undersigned has previously orally ruled that a plan in which an impaired class did not vote on a subchapter V plan cannot be confirmed under § 1191(a).  *See In re Midas Construction LLC* (Case No. 22-02637-EG); *In re Charleston Children's Therapy Center, LLC* (Case No. 23-03821-EG).

9

plan if no ballots are returned by creditors or interest holders in that class. *See In re Ruti-Sweetwater, Inc.*, 836 F.2d 1263 (10th Cir. 1988); *In re Robinson*, 632 B.R. 208 (Bankr. D. Kan. 2021); *In re Jaramillo*, No. 21-10306, 2022 WL 4389292, at *2 (Bankr. D.N.M. Sept. 22, 2022) ("The 'deemed acceptance' rule applies in subchapter V"). In *In re Ruti-Sweetwater*, the Tenth Circuit—the one circuit court that has decided the issue in the context of Chapter 11—noted that the pre-1978 Bankruptcy Act had expressly provided that a failure to vote was deemed a rejection of the plan. This provision was removed when the Bankruptcy Code was passed in 1978, thus the court concluded that non-voting classes will be deemed to have accepted the plan. As the court held in *Ruti-Sweetwater*, "[t]o hold otherwise would be to enforce the proposition that a creditor may sit idly by, not participate in any manner in the formulation and adoption of a plan in reorganization and thereafter, subsequent to the adoption of the plan, raise a challenge to the plan for the first time." *Ruti-Sweetwater*, 836 F.2d at 1266.

A second approach is a subset of the "deemed acceptance" approach and applies only when a bankruptcy court has approved solicitation procedures that contemplate that a silent class will be counted as a deemed acceptance. Those courts have concluded that "where the rule that a non-voting class is deemed to have accepted is 'explicit and well-advertised' to creditors, the court may enforce that rule." *In re AIO US, Inc.*, No. 24-11836 (CTG), 2025 WL 2426380, at *31 (Bankr. D. Del. Aug. 21, 2025). In *In re AIO US*, the order approving solicitation procedures the court entered explicitly stated "[a]ny Class that contains Claims entitled to vote but for which no valid votes are returned shall be deemed to have accepted the Proposed Plan." *Id.* Relying on the holding of *Adelphia* and *Tribune*, the court held that when the solicitation order expressly provides that a silent class will be counted as having accepted the plan, then the court may enforce such procedure

10

in tallying the votes. *Id.*[15]   The court noted that the critical point is not that the rule was well

advertised, but rather the rule had been approved by the court itself after notice to creditors. *Id.*[16]

Because this is a subchapter V and no solicitation procedures are generally approved by the Court

prior to the plan being solicited, this approach does not apply to the facts of this case.[17]

More recently, courts in the Southern District of Texas have taken yet another approach

and disregarded a silent class for purposes of § 1129(a)(8). *See In re Franco's Paving LLC*, 654

B.R. 107 (Bankr. S.D. Tex. 2023); *In re Hot'z Power Wash, Inc.*, 655 B.R. 107 (Bankr. S.D. Tex.

2023).  The Court in *Franco's Paving* stated that it did not believe "that it is limited to the binary

choice between a 'deemed acceptance' and a 'deemed rejection'" as the *Ruti-Sweetwater* court

suggests. *Franco's Paving*, 654 B.R. 107 at 110.  Relying on the definition of acceptance provided

in §1126(c), the *Franco's Paving* court created a mathematical equation requiring the number of

accepting votes in a class to be divided by the number of total votes cast in the same class.  The

*Franco's Paving* court further reasoned that the absence of any votes in a class results in an

indeterminate equation, as it requires division by zero.  Given the laws of mathematics, the

*Franco's Paving* court reasoned Congress presumed the existence of at least one vote in each class

---

[15] *See  In re Tribune Co.*, 464 B.R. 126, 183-84 (Bankr. D. Del.);  *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 260 (Bankr. S.D.N.Y. 2007).

[16] As the court in *AIO* further explained:

> The courts in both *Adelphia* and *Tribune*, however, concluded that where the rule that a non-voting class is deemed to have accepted is "explicit and well-advertised" to creditors, the court may enforce that rule.  While this Court might state the point slightly differently, the Court generally agrees with the basic analysis of those decisions.  In this Court's view, the critical point is not that the principle was announced by the debtor and "well advertised" to the creditors. Rather, the point is that the rule was approved by the court itself after notice to the creditors.  After all, if the *Vita* decision is correct and a class without votes is not an accepting class, then it is hard to see what authority the debtor would have simply to announce a different rule – even if it says so explicitly and clearly.  The Court is more persuaded, however, by the fact that here this rule was not announced unilaterally by the debtor but was instead included in the solicitation procedures that were approved by the Court, without objection, on notice to all parties in interest.

*AIO US*,  2025 WL 2426380, at *31.

[17] The Court finds the reasoning in *AIO* noteworthy; however, the circumstances of this case—where no solicitation procedures were approved—do not support application of that approach.

11

for purposes of § 1126.  *Id.* at 110.  Agreeing with the *Franco's Paving's* court's holding, the *Hot'z Power Wash* court stated:

> [S]ince the application of the mathematical calculation in § 1126(c) is absurd as applied to a nonvoting class, and because the Code is silent on the correct treatment of a nonvoting class, this Court is left with only one option: when an impaired class of creditors fails to cast a ballot, that class will not be counted for purposes of whether § 1129(a)(8) is satisfied.

*Hot'z Power Wash,* 655 B.R. at 118.  Both the *Franco's Paving* court and the *Hot'z Power Wash* court further emphasized Congress's preference for a consensual plan, as reflected in the subchapter V trustee's duty to "facilitate the development of a consensual plan" as enumerated in § 1183.  *See* 11 U.S.C. § 1183(b)(7); *see also  Franco's Paving*, 654 B.R. at 110;  *Hot'z Power Wash*, 655 B.R. at 119.

The final approach—the majority view—requires affirmative acceptance of all impaired classes for a plan to be confirmed as consensual under § 1191(a).  *See, e.g., In re Creason*, No. 22-00988-SWD, 2023 WL 2190623 (Bankr. W.D. Mich. Feb. 23, 2023);  *In re Florist Atlanta, Inc.*, No. 24-51980-PWB, 2024 WL 3714512 (Bankr. N.D. Ga. Aug. 7, 2024);  *In re: Thomas Orthodontics, S.C.*, No. 23-25432-RMB, 2024 WL 4297032 (Bankr. E.D. Wis. Sept. 25, 2024);  *In re M.V.J. Auto World Inc.*, 661 B.R. 186 (Bankr. S.D. Fla. 2024);  *In re Sushi Zushi of Texas*, LLC, No. 24-51147-MMP, 2025 WL 957792 (Bankr. W.D. Tex. Mar. 28, 2025).[18]

---

[18] *See also In re Townco Realty, Inc.*, 81 B.R. 707, 708 (Bankr. S.D. Fla. 1987);  *In re M. Long Arabians*, 103 B.R. 211 (B.A.P. 9th Cir. 1989);  *In re Higgins Slacks Co.*, 178 B.R. 853 (Bankr. N.D. Ala. 1995);  *In re Jim Beck, Inc.*, 207 B.R. 1010, 1013 (Bankr. W.D. Va. 1997);  *In re Smith*, 357 B.R. 60, 66 (Bankr. M.D.N.C. 2006);  *In re Bennett*, No. 07–10864–SSM, 2008 WL 1869308, at *1 (Bankr. E.D. Va. Apr. 23, 2008);  *In re Vita Corp.*, 358 B.R. 749, 751-52 (Bankr. C.D. Ill. 2007), *aff'd* 380 B.R. 525, 528 (C.D. Ill. 2008);  *In re Castaneda*, No. 09–50101, 2009 WL 3756569, at *2 (Bankr. S.D. Tex. Nov. 2, 2009);  *In re Augusto's Cuisine Corp.*, No. 15–09390 (ESL), 2017 WL 1169537, at *7 (Bankr. D.P.R. Mar. 28, 2017);  *In re SB Bldg. Assocs. Ltd. P'ship*, 621 B.R. 330, 374-75 (Bankr. D.N.J. 2020);  *In re New Hope Hardware, LLC*, No. 20-40999-PWB, 2020 WL 6588615, at *3 (Bankr. N.D. Ga. Sept. 9, 2020);  *In re Robinson*, 632 B.R. 208, 216-18 (Bankr. D. Kan. 2021).

In *In re M.V.J. Auto World,* the court confronted a factual confirmation scenario materially similar to the one presently before this Court.  The debtor's plan contained two impaired classes: Class 2 and Class 3.  Class 2, consisting of Ocean Bank's secured claim, accepted the plan.  However, Class 3, consisting of a claim by the SBA, did not vote on the plan.  Although no party filed an objection to the plan, at the confirmation hearing the UST, the Subchapter V Trustee, and Ocean Bank all argued that the plan could not be confirmed under § 1191(a) because less than all impaired classes affirmatively accepted the plan; thus, they argued that the plan could only be confirmed under the requirements of § 1191(b).  The court in that case declined to disregard the SBA's silence under § 1129(a)(8) stating, "the Bankruptcy Code on this point is neither silent nor absurd, but, rather, unambiguous and consistent with the purposes of the Bankruptcy Code." *M.V.J. Auto World*, 661 B.R. at 189.  The *M.V.J. Auto World* court also dismissed the argument that Congress failed to account for the possibility that a class of creditors might abstain from voting, observing that § 1126(a) is framed in permissive terms— "that the holder of a claim *may* accept or reject a plan, not *shall* accept or reject a plan."  *Id.* at 189.  Section 1129(a)(8) does not compel acceptance or rejection; rather, it looks only to whether a class has accepted a plan—not if a class has rejected a plan or stood silent.  *Id.* at 190.  The court further reasoned that "[i]t is not absurd that no creditors in a class voting on a plan should be treated any differently than a situation where there is not a sufficient number of creditors voting in favor of a plan to satisfy section 1129(a)(8)." *Id*.

Similarly, in *Sushi Zushi*, the court for the Western District of Texas noted that by using the term "may" in § 1126(a), Congress left open a third option that creditors could choose—to neither accept nor reject the plan.  *Sushi Zushi*, 2025 WL 957792, at *3.  Though Congress does have a preference for consensual plans, the bankruptcy court for the Western District of Texas explained:

13

> Congressional preference for consensual plans does not require a court to interpret all statutory language in subchapter V in favor of confirmation of consensual plans any more than the Code's goal of a "fresh start" means that a court should interpret statutory language to grant a debtor and its associates a broad, unrestricted discharge regardless of (i) debtor misbehavior, (ii) notice to creditors and (iii) specific exceptions to discharge.

*Id.* "[F]rom a policy standpoint, the apathy of creditors who fail to vote is not a sufficient reason to override what § 1129(a)(8) requires." *Id.*; *see also Florist Atlanta*, 2024 WL 3714512, at *2 (holding that "acceptance for purposes of § 1129(a)(8) requires affirmative acceptance by the class.").

### 2. *Debtor's Plan Cannot Be Confirmed as a Consensual Plan*

Under the circumstances of this case, the Court finds the majority view both compelling and well-reasoned. From the outset, the Court notes that in holding that the failure of creditors in a class to return any ballots was "deemed acceptance" of the plan by the class, the specifics of *In re Ruti-Sweetwater* are vastly different than the case before this Court. *Ruti-Sweetwater* involved a complicated plan of reorganization with a complex capital structure and over eighty (80) separate classes of creditors, where a single creditor objected, *after* the plan was confirmed, to having been deemed to have consented to the proposed treatment under the plan by failing to cast a ballot. The court in *Adelphia* observed that in the case before it the issue as to "deemed acceptance" arose in a similar factual context,[19] noting:

> *Ruti-Sweetwater* carries even greater weight when applied to a case like this one, because the situation faced by the debtor-in-possession there was similar to that of the Debtors. Like this case, *Ruti-Sweetwater* involved a complicated plan of reorganization for a large multi-entity conglomerate with a sophisticated capital structure and various levels of indebtedness. Subjecting the plan to the higher requirements for cramdown, simply by reason of a class's failure to vote, made no sense.

---

[19] In *Adelphia*, the proposed plan classified creditors in many classes and the thirty (30) classes that voted and accepted the plan accounted for more than $12 billion in debt while the classes in which no creditors voted totaled less than $50,000—or 0.0005% of the claims. *Adelphia*, 368 B.R. at 260.

*Adelphia*, 368 B.R. at 262.  The court declined to decide whether a similar analysis would apply to smaller cases.  *Id*.

The case presently before this Court is distinguishable from the facts in *Ruti-Sweetwater* or *Adelphia*.  It is a small business case where Debtor elected to file under subchapter V.  Its capital structure is not complex, and Debtor's plan classifies its creditors and interest holders in five separate classes—four of which are impaired and entitled to vote.  While the reasoning and conclusion reached in the *Ruti-Sweetwater* and *Adelphia* decisions may have been appropriate under the circumstances in those cases, the Court finds that the failure of the creditors in Class 3 to submit a vote accepting or rejecting confirmation of the Plan is not equivalent to acceptance of the plan as required by § 1126(c).

Additionally, courts within the Fourth Circuit have previously held that a silent class has not accepted the plan for purposes of § 1129(a)(8).  *In re Smith*, 357 B.R. 60 (Bankr. M.D.N.C. 2006);  *In re Highway 751 Partners, LLC*, No. 09-06564-8-JRL, 2010 WL 428915 (Bankr. E.D.N.C. Jan. 15, 2010);  *In re Bennett*, No. 07-10864-SSM, 2008 WL 1869308 (Bankr. E.D. Va. Apr. 23, 2008).  In one of the first bankruptcy cases in the Fourth Circuit addressing the issues, the Bankruptcy Court for the Western District of Virgina concluded "that the line of cases which hold that failure of a creditor or class to [cast a] ballot does not result in a default acceptance of the plan is better reasoned and more persuasive than the *Sweetwater* analysis and decision."  *In re Jim Beck, Inc.*, 207 B.R. 1010, 1015 (Bankr. W.D. Va.), *aff'd,* 214 B.R. 305 (W.D. Va. 1997), *aff'd,* 162 F.3d 1155 (4th Cir. 1998).[20]

---

[20] Though not directly addressing the issue that silence does not equal acceptance for voting purposes, the Fourth Circuit affirmed the lower court's finding that the plan met the requirements for confirmation pursuant to §1129(b)(1). *In re Jim Beck, Inc.*, 162 F.3d 1155 (4th Cir. 1998).

Furthermore, the Court finds it difficult to reconcile the notion of "deemed acceptance" by an impaired class failing to vote with § 1126(f), which provides that an unimpaired class is "conclusively presumed to have accepted the plan." 11 U.S.C. § 1126(f). Section 1126(f) is the only provision of the Bankruptcy Code specifying when a creditor is deemed to have accepted a plan without having submitted a ballot, and it is reasonable to assume that Congress intended §1126(f) as the exclusive means by which a creditor could be deemed to have accepted a plan in the absence of a ballot, as Congress could have specified other circumstances in which the concept applies.

The case before this Court is more analogous to that of *M.V.J. Auto World,* where the Court held that a class's failure to vote should either not be treated as an acceptance of the plan by that class or disregarded for purposes of § 1129(a). *M.V.J. Auto World, Inc*., 661 B.R. at 189. As in this case, the SBA was the lone member of its class, and that class was the only impaired class that failed to cast a ballot on the plan. Debtor argues that the facts differ because Ocean Bank, the UST, and the Subchapter V Trustee all objected to the plan being confirmed as consensual under § 1191(a). In this Court's view, that is a distinction without substantive difference. The Court is unpersuaded that the *M.V.J. Auto World* court would have ruled differently merely because the sole objection to consensual confirmation was raised by the UST, as occurred in this case.

The court in *M.V.J. Auto World* rejected the approach that failure to vote allows the class to be disregarded for purpose of § 1129(a)(8) finding the Bankruptcy Code to be unambiguous. *M.V.J. Auto World, Inc*., 661 B.R. at 189. Rather, for a plan to be confirmed as consensual it must meet the requirements of § 1129(a)(8). This Court agrees with the reasoning of *M.V.J. Auto World* and finds that the Bankruptcy Code is not ambiguous; therefore, a class's silence should not be disregarded or considered an acceptance.

### 3. *The Court Declines to Adopt the Narrow Approach that Would Apply to A Non-Voting Impaired Governmental Class*

Debtor requests that the SBA's silence be treated either as a deemed acceptance of the Plan or, alternatively, be disregarded for purposes of § 1129(a)(8), on the ground that the SBA, as a matter of internal "policy" or practice, does not vote on chapter 11 plans in light of § 1126(a) which provides that the Secretary of Treasury may vote on behalf of the United States.  Essentially, the Debtor is asking the Court to adopt a fifth approach which would allow the silence of a single class consisting of a government entity to be treated as an acceptance or disregarded for purposes of § 1129(a).  In support of its request, Debtor asserts that the Court has the authority to do so pursuant to 11 U.S.C. § 105.  For the reasons set forth below, this Court declines to adopt such an approach.

First, the Bankruptcy Code clearly sets forth the requirements for a class of claims to accept a plan. *See* 11 U.S.C. § 1126(c).  Fed. R. Bankr. P. 3018 also expressly sets forth that an acceptance "shall be in writing."  The Court does not find an ambiguity in the Bankruptcy Code as to this issue.  Moreover, neither the Bankruptcy Code nor the Bankruptcy Rules provide a government carve-out to these requirements.  As the Supreme Court noted, "[i]t suffices that the natural reading of the text produces the result [I] announce.  Achieving a better policy outcome . . . is a task for Congress, not the Courts." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 13-14 (2000) (citations omitted).

The matter cannot be said to have escaped Congress's attention.  *Ruti-Sweetwater* was decided thirty-eight (38) years ago and the Bankruptcy Code has undergone significant revisions since—but none have dealt with the issue.  This very same issue in the context of subchapter V cases has been raised as recently as two years ago by the American Bankruptcy Institute

17

Subchapter V Task Force.[21] Where there is an absence of an affirmative vote, the Subchapter V Task Force stated, "the plan is arguably consensual because no one opposes it. Nevertheless, one of the statutory requirements for consensual confirmation is affirmative acceptance by all impaired classes." [22] The Subchapter V Task Force believed this issue should be remedied by Congress and specifically recommended that § 1191(a) be revised to expressly address that a plan may be confirmed as consensual in the absence of affirmative votes; however, Congress has not addressed or corrected the issue to date.[23] Although the Court is sympathetic to the result, it lacks the authority to fashion a remedy that would alter the statutory requirements at issue.

Second, the Court is not convinced that Debtor's assertions of the SBA's internal procedures which result in the agency remaining silent during plan voting are entirely accurate. As the Court noted at the hearing, the record is devoid of any evidence regarding the purported "policy" to which Debtor alludes. Notably, § 1126(a) states "[i]f the United States is a creditor or equity security holder, the Secretary of the Treasury *may* accept or reject the plan on behalf of the

---

[21] Hon. Michelle M. Harner *et al*., Final Report of the American Bankruptcy Institute Subchapter V Task Force, (2023-2024). The Final Report of the American Bankruptcy Institute Subchapter V Task Force can be found at https://connect.abi.org/l/107412/2024-04-22/6wj4lm. The preamble in the Final Report states:

> The ABI Task Force undertook a year-long, in-depth study of Subchapter V of Chapter 11 of the Bankruptcy Code. The Task Force studied the statute and related case law, analyzed empirical data, and heard directly from the major constituents affected by Subchapter V. This Report details the Task Force's key findings and recommendations. Overall, the information reviewed by the Task Force overwhelmingly shows that Subchapter V is working as Congress intended, allowing smaller companies to reorganize their businesses and to make payments to their creditors. The Task Force's study also revealed, however, certain practices and procedures that may benefit from further refinement or statutory amendment. Accordingly, this Report not only highlights key takeaways from the Task Force's study but also offers best practices and potential statutory amendments for policymakers, judges, and practitioners to consider.

*Id.* at 1.

[22] *Id*. at 58.

[23] The Task Force recommended § 1191(a) be revised to include two subsections with the second subsection reading:

> (2) (A) all of the requirements of section 1129(a), other than paragraphs (8), (10), and (15)
> of that section, of this title are met;
>> (B) all of the requirements of section 1191(b) are met; and
>> (C) no class of claims or interests that is impaired under the plan votes to reject
>> the plan and no creditor within such class objects to confirmation of the plan.

18

United States." 11 U.S.C. § 1126(a) (emphasis added). The statutory language does not require that a governmental agency's vote be cast by the Secretary of the Treasury; instead, it merely permits such action. *In re Mikulec Indus., Inc.*, No. 83-12354M, 1992 WL 170685, at *3 (W.D.N.Y. July 13, 1992) (concluding that § 1126(a) did not impose "an absolute requirement that the government's vote be cast by the Secretary of Treasury, especially in light of the use of the permissive 'may' in the above-quoted provision.").

Third—and more significantly—the Court takes judicial notice that the Bankruptcy Court for the Southern District of California recently considered confirmation of a plan in a subchapter V for which the SBA returned three ballots, signed by counsel from the U.S. Attorney's Office, accepting the plan.[24] This suggests that the Secretary of Treasury may not possess the exclusive right to vote on the SBA's behalf, as Debtor argues.

Fourth, granting Debtor's request—thereby effectively carving out a government-specific exception based on the SBA's internal voting practices—would create an unwarranted and troubling precedent. If the Court were to treat the SBA's silence as deemed acceptance, or otherwise disregard it on that basis, it would open the door to analogous requests from other creditors. Under such a framework, any creditor could, in theory, adopt an internal policy declining to participate in chapter 11 plans. The Bankruptcy Code, however, does not contemplate or authorize such individualized exceptions, and it is not the Court's role to evaluate, enforce, or accommodate the internal governance policies of creditors with respect to plan voting procedures.

Lastly, though the Court has the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title" under § 105, the Court cannot replace a clear statute with equity. Said differently equity follows the law. *See Hedges v. Dixon*

---

[24] *In re Side Yard Public House, Inc.*, C/A No. 25-04126-BJM, ECF No. 107, filed Apr.10, 2026.

*Cnty.*, 150 U.S. 182, 192 (1893); *In re Tidwell*, 19 B.R. 846, 847 (Bankr. E.D. Va. 1982); *Law v. Siegel*, 571 U.S. 415, 421 (2014) ("[I]n exercising those statutory and inherent powers, a bankruptcy court may not contravene specific statutory provisions."). This Court concludes that the Bankruptcy Code is unambiguous and that classes of claims must affirmatively accept a chapter 11 plan for purposes of § 1129(a)(8). Accordingly, the Court declines to construe the SBA's silence as acceptance of the Plan or to disregard it on the basis of its status as a governmental entity.

The Court acknowledges that this result may appear harsh at first blush; however, it does not foreclose all avenues of relief for Debtor. The Bankruptcy Code itself provides a path forward: The Plan may still be confirmed, albeit under 11 U.S.C. § 1191(b). Though that outcome may not be as attractive to Debtor, it still would result in Debtor receiving a discharge under § 1192 "as soon as practicable" after Debtor completes the Plan payments. Further, the reality is that this situation does not occur in every case where a government agency is involved. Often, the only governmental agency is the Internal Revenue Service, and their claim may not even require the designation of a class if the claim is of a kind specified in 11 U.S.C. § 507(a)(8). *See* 11 U.S.C. § 1123(a)(1). Lastly, while it does not help Debtor in this case, the upcoming amendment to Federal Rule of Bankruptcy Procedure 3018, expected to go into effect on December 1, 2026, may provide some relief on this issue.[25] Whereas current Rule 3018(c) requires the acceptance or

---

[25] Supreme Court of the United States, *Proposed Amendments To The Federal Rules Of Bankruptcy Procedure*, (Apr. 8, 2026) https://www.supremecourt.gov/orders/courtorders/frbk26_o7jp.pdf. The amendment to Rule 3018 would provide:

Means for Accepting or Rejecting a Plan; Procedure When More Than One Plan Is Filed.
   (1) Alternative Means.
      A. By Ballot. Except as provided in (B), an acceptance or rejection of a plan must:
         i. be in writing;
         ii. identify the plan or plans;
         iii. be signed by the creditor or equity security holder—or an authorized agent; and
         iv. conform to Form 314.
      B. As a Statement on the Record. The court may also permit an acceptance—or the change or withdrawal of a rejection—in a statement that is:

20

rejection of a chapter 11 plan in writing, the proposed amendment authorizes a court to additionally treat as an acceptance of a plan a statement on the record by a creditor or the creditor's attorney or authorized agent. Though it remains uncertain at this point whether this change would facilitate governmental agencies appearing through an agent or counsel for the purpose of casting an oral acceptance, the amendment to the Bankruptcy Rule appears to be a step toward facilitating the participation of a creditor without an actual written vote.

Although the Court may prefer a different outcome on this record, it is constrained by statutory authority to conclude that the silence of an impaired class cannot be deemed acceptance for purposes of plan confirmation. While this precludes consensual confirmation under § 1129(a), it does not end the inquiry, as the Code still permits confirmation through the nonconsensual "cramdown" provision of §1191(b). Based on the record before it, the Court finds that those requirements are met.

## CONCLUSION

**IT IS, THEREFORE, ORDERED** that Debtor's request to have the Plan confirmed as consensual under 11 U.S.C. § 1191(a) is DENIED; however, the Plan is hereby confirmed pursuant to 11 U.S.C. § 1191(b). The Court will enter a separate order confirming the Plan under § 1191(b).

**AND IT IS SO ORDERED.**

---

    i.   part of the record, including an oral statement at the confirmation hearing or
         a stipulation; and
    ii.  made by the creditor or equity security holder—or its attorney or authorized
         agent.

21